Laurence ("Laird") J. Lucas (ISB# 4733)
Marc Shumaker (ISB #9606)
*Advocates for the West*
P.O. Box 1612
Boise, ID 83701
208-342-7024
llucas@advocateswest.org
mshumaker@advocateswest.org

Deborah A. Ferguson (ISB# 5333)
Ferguson Durham, PLCC
223 N. 6th Street, Suite 325
Boise, ID 83702
208-345-5183
daf@fergusondurham.com

*Attorneys for Plaintiffs*


## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IDAHO RIVERS UNITED, and FRIENDS OF THE CLEARWATER, | ) ) ) | No. 3:16-cv-102-CWD |
| *Plaintiffs,* | ) ) | **PLAINTIFFS' RESPONSE** |
| v. | ) ) | **OPPOSING MOTION TO** **INTERVENE** |
| | ) | (*Docket No. 20*) |
| NEZ PERCE-CLEARWATER FOREST SUPERVISOR CHERYL F. PROBERT; UNITED STATES FOREST SERVICE; NOAA FISHERIES; and U.S. FISH AND WILDLIFE SERVICE, | ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |


## INTRODUCTION

The Court should deny the motion to intervene (*Docket No. 20*) by Idaho Forest

Group LLC ("IFG") and R&R Conner Aviation LLC ("R&R"), because it omits and

misrepresents key facts; does not establish grounds for intervention of right or

PLAINTIFFS' RESPOSNE TO MOTION TO INTERVENE -- 1

permissively; and would unfairly prejudice Plaintiffs through movants' lack of diligence in seeking to intervene in this injunction phase of the litigation.

Most notably, movants fail to disclose the fact that they were advised and fully aware of this litigation before they bid upon and accepted the logging contracts which they now cite as grounds for intervening.  As explained below, this undermines their assertions of having vested contract rights and that the Court may not order an injunction because of the economic harms they would allegedly suffer.

They also misrepresent other facts, including that the Clearwater Basin Collaborative (CBC) and member conservation groups such as Idaho Conservation League (ICL) "fully support" the Johnson Bar Project.  To the contrary, the CBC expressly avoided taking a position on the Project; and ICL submitted extensive comments on the Johnson Bar Draft EIS that echoed the same serious ecological and legal concerns raised by Plaintiffs here.  It is improper for these self-interested commercial logging companies to purport to speak for – and misrepresent – the position of the CBC and conservation groups about the Johnson Bar Project to the Court.

Moreover, movants delayed seeking intervention until after the injunction motion was filed, despite having notice of this case several weeks ago; and now seek to "sandbag" Plaintiffs through their misleading assertions when the injunction briefing is proceeding rapidly toward hearing on April 26th.  These and other defects discussed below thus justify denying intervention.

However, if the Court does grant intervention, Movants' participation in the injunction proceedings should be limited to the submissions already filed with the Court in light of the expedited briefing and hearing schedule; and their participation in

PLAINTIFFS' RESPOSNE TO MOTION TO INTERVENE -- 2

resolution of the case on the merits should ensure they do not duplicate the Federal

Defendants' arguments, as discussed below.

## STATEMENT OF RELEVANT FACTS

**Movants Were Advised Of This Litigation Before Bidding On The Sales**.

The intervention motion cites the Johnson Bar timber sale contracts which the

IFG and R&R movants executed with the Forest Service as their primary interests in

moving to intervene.  *See* Intervention Brief (*Docket No. 20-1*), pp. 1, 8-11.

They state that IFG purchased and was awarded the "Peterson Point" timber sale

contract on March 30, 2016; while R&R purchased the "Hot Deck" sale on March 23,

2016 and was awarded that contract on April 4, 2016.  *Id.*, p. 4.  Based on these contracts,

their brief insists: "These contractual rights, harvest use of the forest, and economic

interests in the sales all constitute significantly protectable interests justifying leave to

intervene." *Id.*, p. 1.

Yet movants fail to disclose that they were advised of the pendency of this

litigation <u>before</u> they bid upon and accepted those contracts; and thus they accepted the

contracts knowing full well they may not be able to execute them.

Specifically, all potential bidders – including movants – were advised by the

Forest Service in its prospectuses for the "Peterson Point" and "Hot Deck" timber sales

that this litigation was pending, and that any successful purchaser thus "will be required

to enter into a Pre-Award Waiver, Release and Limitation of Liability Agreement prior to

award of contract."  *See* Lucas Declaration, filed herewith, Ex. 1 (amended timber sale

prospectuses advising of this litigation).

Counsel for Plaintiffs also specifically confirmed with counsel for the Forest

PLAINTIFFS' RESPOSNE TO MOTION TO INTERVENE -- 3

Service that all bidders were advised of the pendency of this litigation before the sales were awarded.  *See id.*, Ex. 2 (email from counsel for Forest Service confirming that bidders were advised of this litigation before the sale awards).

Yet the motion to intervene and supporting declarations make no mention of the fact that movants knew full well the Johnson Bar Project was under litigation and may be enjoined, before the logging companies obtained the timber sale contracts.  Their intervention motion is premised on their alleged vested contract rights to log the Johnson Bar timber sales, but in fact those "rights" are contingent upon the outcome of this litigation.  Their intervention motion, brief, and declarations argue at length that their economic interests will be harmed by an injunction, without recognizing those interests were knowingly acquired to be entirely contingent on this litigation.

**Movants Misrepresent The Position Of The CBC and ICL.**

The intervention motion and supporting papers also mislead the Court into believing the Clearwater Basin Collaborative (CBC) and conservation groups that participate in it have supposedly given their blessing to the Johnson Bar Project.

Their brief asserts that: "The CBC, including Idaho Conservation League, The Wilderness Society, and The Nature Conservancy, along with Idaho County and IFG, fully supports the project."  *See* Intervention Brief (*Docket No. 20-1*), p. 6 (emphasis added).  The brief cites the declaration of IFG's William Higgins, who states:  "The CBC recognized the importance of the Johnson Bar Project to restoring forest health in the project area.  It submitted a letter of support for the project to the Forest Service.  A true and correct copy of the letter is attached as Exhibit A."  *See* Higgins Decl. (*Docket No. 20-3*), ¶ 9 & Ex. A thereto.

These are false or misleading statements, which the Court should not credit.  In truth, the CBC avoided taking a position on the Johnson Bar Project, reflecting the varying views of its diverse membership.  This is confirmed both by Exhibit A to the Higgins Declaration, which is a March 31, 2016 letter addressed to "To Whom It May Concern."  This letter post-dates the Johnson Bar FEIS and ROD (both approved in February 2016), so it was not submitted to the Forest Service as part of the Johnson Bar Project decision-making process.  Further, CBC's scoping comments on the Johnson Bar Project that were submitted to the Forest Service took no formal position on the project.  Movants fail to mention or submit to these comments to the Court, so they are provided herewith.  *See* Lucas Decl., Ex. 3 (CBC comments) (FS 2764).[1]

Both the CBC letters reflect a variety of economic, environmental and other viewpoints that CBC said the Forest Service should consider in the Johnson Bar Project process; but they most certainly did not express CBC's "full support" for the Project, or anything like it.  To the contrary, the CBC's December 2014 comment letter emphasized that the Forest Service should consider a range of environmental values and resources, and "fully comply with standards, requirements, and best available science." *See* Lucas Decl., Ex. 4, p. 2 .  Among the points raised in the CBC letter was concern about the Project's impacts to the Wild and Scenic corridor, stating:

> It is understood that a portion of the Johnson Bar Salvage Project is located within the Middle Fork Clearwater and Selway Wild and Scenic River System. As such, we encourage the Forest Service to consider the scenic and aesthetic impacts of the proposed treatments and to consider a range of alternatives that minimize any impacts to the Outstandingly Remarkable Values of the Middle Fork Clearwater and Selway Rivers in accordance with the intent of the Wild and Scenic Rivers Act and associated management plans for the Middle Fork Clearwater and Selway Rivers.

---

[1] "FS _____" citations in this brief refer to the Administrative Record location where the cited document can also be found.

*Id.*, p. 4 (FS 2766). As demonstrated in Plaintiffs' Opening Injunction Brief (*Docket No. 14-1*), the Project's selected alternative does not conform with the Wild and Scenic Rivers Act, despite these concerns expressed by the CBC.

The CBC's March 2016 "To Whom It May Concern" letter, submitted with the intervention motion, reiterated that CBC's prior comment letter had "encouraged careful consideration of topics relevant to the project, including consistency with applicable laws, the PACFISH Biological Opinion, the Wild and Scenic Rivers Act and other relevant management direction." *See* Higgins Decl., Ex. A (*Docket No. 20-4*), p. 2.  The letter also stated clearly that:

> The CBC submitted scoping comments on the Johnson Bar Salvage Project outlining several of the Collaborative's ideas for developing alternatives. Because the CBC represents a broad spectrum of interests, the letter identified both environmental and economic considerations with regards to the project, without taking a formal position on the project.

*Id.* (emphasis added).

Where the CBC's letters thus make clear that the CBC did not take a position on the Johnson Bar Project, and its scoping comments in fact identified the need for the Forest Service to "fully comply with standards, requirements, and best available science" and protect Wild and Scenic values, it is false and misleading for movants to now assert that the CBC "fully supports" the Project.

Even more outrageous is movants' assertion that conservation group members of the CBC, including Idaho Conservation League, "fully support" the Project as well.  ICL submitted its own comments on the Johnson Bar DEIS in May 2015, which raised virtually identical concerns as Plaintiffs now present to the Court regarding the Johnson Bar Project's adverse impacts and inconsistencies with governing legal and policy

PLAINTIFFS' RESPOSNE TO MOTION TO INTERVENE -- 6

requirements.  Because movants failed to provide this information to the Court, ICL's

comment letter is submitted herewith.  *See* Lucas Decl., Ex. 4 (ICL May 15, 2015

comment letter) (FS 2842).  ICL's comments express many concerns about the Project,

including the following issues all raised by Plaintiffs here:

> As the DEIS notes, the fire behavior and effects associated with the Johnson Bar fire generally are consistent with the historic fire regime when it states, "The project area is characterized as a mixed severity fire regime (Smith, 1997) which is consistent with the pattern of the Johnson Bar fire." As a result, we question whether this landscape is "ripe" for further significant disturbance, especially given the sensitivity of the watersheds, soils, Wild and Scenic Rivers, ESA-listed species and other resources. . . .

> Any salvage logging must be ecologically justified and should ensure that appropriate mitigation and design features are incorporated to protect soils, water quality, Threatened, Endangered and sensitive (T,E & S) species, and the outstandingly remarkable values of the Selway and Middle Fork Clearwater Wild and Scenic Rivers. As was pointed out in comments submitted on behalf of the Clearwater Basin Collaborative (to which [ICL] was signatory), we encouraged you to ensure consistency with the PACFISH Biological Opinion –Special Management Provisions for the Selway, Middle Fork Salmon and South Fork Salmon Rivers (1998), attached as Appendix I. The FEIS should disclose the provisions of the PACFISH BiOp and discuss how the alternatives comply with that direction. . . .

> Specifically, the terms of the Bi-Op prohibit construction of new roads, reopening of closed roads, construction of landings and require low impact harvest through horse or helicopter yarding and skidding. Because much of the project occurs within the Selway River drainage, it appears that the proposal is inconsistent with this direction. This dispute should be thoroughly vetted and discussed in the FEIS. Moreover snags, logs and other woody debris play a critical role in mitigating post-fire erosion rates and facilitating recovery of the ecosystem. These structures trap run-off, reduce the impact of precipitation on mineral soil, create favorable microclimates for regeneration, and contribute nutrients to the soil. By removing them, natural rates of recovery will be slowed.

> In particular, the association between roads and elevated sediment levels are well established. Because roads often serve as a vector for increased sedimentation, this consideration should be closely evaluated in the FEIS, Hydrology Report, and in Fisheries BA/BE. The analysis should consider how dead and dying trees and their juxtaposition along roadsides can reduce or mitigate the effects associated with sediment delivery to streams. . . .

PLAINTIFFS' RESPOSNE TO MOTION TO INTERVENE -- 7

Based on these concerns and considerations, we question whether the project, as proposed, will be consistent with existing Forest Plan and other direction. Concerns over the unintended consequences of salvage logging grow in importance given the longer fire seasons and increased disturbance activity projected under a changing climate (Wotton and Flannigan 1993). Further, because salvage logging is being proposed within an area that has been subject to natural disturbance, the cumulative severity of these disturbances (Peterson and Leach 2008) may create unbalanced and "unhealthy" conditions for the local ecosystem (Paine et al. 1998). . . .

We question whether salvage is appropriate across much of the project area, especially in areas dominated by fragile soils and steep slopes, where soil temperatures can be a limiting factor in the successful regeneration of early seral species. . . .

With regard to upward trend and prescription watersheds, we are concerned that the DEIS fails to adequately demonstrate compliance and consistency with the Forest Plan. Even though the Forest Plan Prescription Watersheds were established to serve as the focal area for watershed metrics to evaluate the impact of projects, the DEIS fails to accurately portray those impacts. . . .

The DEIS also fails to accurately portray the extent of cumulative effects associated with private and state logging adjacent to the project area. . . .

Based on the anticipated effects of the project, the steep slopes, sensitive soils, and T, E&S species, we are concerned that the project could adversely affect sensitive fish and wildlife and their habitats.

*See* Lucas Decl., Ex. 4, pp. 2-8.

It is improper for movants – two logging companies that seek to profit from the Johnson Bar Project – to purport to speak for ICL or other conservation groups before this Court. Even more so, when they have not accurately portrayed the actual record and facts. Movants' misleading statements and omissions thus strongly counsel against allowing their intervention in this case.

**Misleading Statements About The Project.**

There are many other misleading or unsupported assertions in the motion to intervene and supporting papers regarding the nature and impacts of the Johnson Bar

PLAINTIFFS' RESPOSNE TO MOTION TO INTERVENE -- 8

Project as well.  They include assertions that:

      • the Johnson Bar fire resulted in "very high tree mortality," *see* Higgin Decl., ¶ 7, when in fact it was a "mixed severity" fire in which only 4% of the fire area burned at a high intensity, *see* FS 2500-8;

      • the Project will be "exceptionally light on the land" through use of helicopter and other logging techniques, *see* Conner Decl., ¶ 6, when in fact extensive clearcuts will be created denuding large areas adjacent to the Wild and Scenic corridor, contributing to cumulative impairment of ecological, scenic and aesthetic values, as illustrated by the photographs of recent logging on state and private lands in the same area submitted with Plaintiffs' injunction motion, *see* Lewis Declaration Exhibit 4 and Macfarlane Declaration Exhibit 1;

      • logging the burned areas is necessary to prevent further fires in the future, when even the FEIS acknowledges that these risks are perhaps decades out, and extensive science debunks this myth; *see* FEIS at 4 (FS 1B_0013); FOC and IRU Objections at 11, 65 (FS 27_0005).

      Plaintiffs will not further belabor these points here, as the briefings and hearing on the injunction motion will address more fully the Project record.  But Plaintiffs ask the Court to recognize that these assertions are made by proponents of the Project who stand to benefit financially from the logging, and their self-interested view is not necessarily consistent with science or facts on the ground.

## ARGUMENT

### I.      THE COURT SHOULD DENY INTERVENTION AS OF RIGHT.

The Court should deny the motion to intervene as of right, because movants have

not carried their burden of establishing all four prongs under Fed.R.Civ.P. 24(a). *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir.2002) (applicant bears burden of establishing all four prongs for intervention of right); *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir.2009) ("failure to satisfy any one of the requirements is fatal to the application").

### A.   The Motion Is Not Timely Under The Circumstances.

As discussed in movants' brief, three factors are weighed in determining whether a motion to intervene is timely: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay. *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002); *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

Under normal circumstances, and the cases cited by movants, their intervention motion would be timely. But the facts of this case are unusual because of the expedited timeframes involved here, and demonstrate that the motion is untimely and Plaintiffs will be prejudiced if intervention is allowed, at least in the injunction phase of proceedings.

The Johnson Bar Project ROD was signed on February 17, 2016 – but was not publicly announced until February 23, 2106. *See* Complaint, ¶ 60. Plaintiffs moved quickly to challenge the Project by filing their complaint on March 11, 2016, and they submitted their injunction motion on April 6, 2016. Expedited briefing and hearing on the injunction motion are proceeding rapidly, with Federal Defendants' response brief due on April 19, 2016, and Plaintiffs' reply brief due three days later, on April 22, 2016. The injunction hearing is set for April 26, 2016; and, unless enjoined, implementation of the Johnson Bar Project timber sales is slated to begin on May 15, 2016.

PLAINTIFFS' RESPOSNE TO MOTION TO INTERVENE -- 10

As noted above, movants were advised of the pendency of this litigation before they bid on the two timber sales on March 23 and March 30, respectively.  Yet they did not move to intervene until April 11, 2016.  They have not explained their delay in moving to intervene until a month after the case was filed and a week after the injunction motion was submitted.

Plaintiffs will be substantially prejudiced if intervention is granted now and Intervenors are allowed to fully participate in the injunction proceedings.  Plaintiffs have only three days to prepare their reply brief responding to Federal Defendants' arguments in the response brief due on April 19, which is a highly compressed schedule under any standard.  Plaintiffs will be unfairly burdened if they have to respond to further briefings and submissions from proposed intervenors as well within the existing schedule.

Accordingly, the motion to intervene under Rule 24(a) should be denied on timeliness grounds given the facts of this case.[2]

**B.  Movants Do Not Have Vested Economic Interests They Claim.**

As discussed above, movants failed to disclose to the Court that they were advised by the Forest Service about the pendency of this litigation before they bid upon or were awarded the two Johnson Bar timber sale contracts.  Lucas Dec., Exs. 1-2. Thus, they knew and understood that their timber sale contracts were contingent upon the outcome of this litigation.

As movants' brief discusses, other cases have allowed intervention based on logging contracts for challenged timber sales.  But the situation here does not present the vested contract rights that movants insist they have.  The fact that they were on notice of

---

[2] As discussed further below, if the Court does allow intervention it should limit movants' participation in the injunction phase to the declarations and briefings already filed, which address the particular interests of IFG and R&R.

this litigation, and still proceeded to bid upon and accept the Johnson Bar Project timber

sale contracts, means that their alleged contract interests are not the vested rights they

claim, and may not offset the entry of injunctive relief.

      As Chief Judge Winmill recently noted, in granting a preliminary injunction in the

related Johnson Bar fire litigation over use of a Forest Service road by the Idaho

Department of Lands:

> Moreover, it was only after this lawsuit was filed that the State auctioned and
> implemented the timber sale, and so it has to some extent created its own harm.
> *National Forest Preservation Group v. Butz,* 485 F.2d 408, 411 (9th Cir. 1973)
> (holding that party acts "at his peril" if, after being notified of the lawsuit, he
> proceeds with action sought to be enjoined).

*See* Memorandum Decision and Order, *Idaho Rivers United v. Hudson*, No. 3:15-cv-169-

BLW (July 10, 2015) (*Docket No. 19*), p. 7.  *See also Jones v. S.E.C.*, 298 U.S. 1, 17

(1936) ("The rule is well settled . . . that where a suit is brought to enjoin certain acts or

activities . . . of which suit the defendant has notice, the hands of the defendant are

effectually tied pending a hearing and determination, even though no restraining order or

preliminary injunction be issued"); *Porter v. Lee*, 328 U.S. 246 (1946)("[A]fter a

defendant has been notified of the pendency of a suit seeking an injunction against him,

even though a temporary injunction be not granted, he acts at his peril and subject to the

power of the court to restore the status, wholly irrespective of the merits as they may be

ultimately decided").

      These cases – where a party has notice of litigation but proceeds anyway, at its

own peril – undercut movants' claims of vested economic interests at stake here. They

entered into the timber sale contracts with their eyes wide open, fully informed about this

case, and taking the risk that the Project would be enjoined.  They cannot bootstrap their

PLAINTIFFS' RESPOSNE TO MOTION TO INTERVENE -- 12

contingent contract interests into the vested economic interests they assert for purposes of claiming entitlement to intervene under Rule 24(a).

### C. Intervenors Have Fail To Demonstrate That Federal Defendants Will Not Adequately Represent Their Interests.

Movants also fail to demonstrate any reason to believe that the Federal Defendants will not adequately represent their interests in this case, such that they should be entitled to intervene as of right under Rule 24(a).

The Court considers three factors to determine the adequacy of representation: (1) whether the interest of a present party is such that it undoubtedly will make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki v. Cateyano*, 324 F.3d 1078, 1086 (9th Cir.2003).  The most important factor is how the proposed intervenor's interest compares with the interests of the existing parties. *Id.*  Where the present party and proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation applies, and the proposed intervenor can rebut that presumption only with a "compelling showing" to the contrary.  *Perry*, 587 F.3d at 947; *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997) ("Where an applicant for intervention and an existing party 'have the same ultimate objective, a presumption of adequacy of representation arises," thus warranting denial of intervention).

As discussed in Plaintiffs' Opening Injunction Brief, the Forest Service's primary purpose in pursuing the Johnson Bar Project was to benefit the local economy by authorizing salvage logging quickly after the Johnson Bar fire.  *See* FEIS at 11; ROD at

25.   The Forest Service has continued to move forward aggressively with the Project, auctioning the two timber sales in March 2016, even after this case was filed and the agency knew it was being challenged in court.  Its insistence on rapidly logging to benefit local mills is abundantly documented in the record, underscoring the congruence of interests between the Forest Service and the logging company movants.

Neither has there been any suggestion that the Federal Defendants will not aggressively and zealously defend the Johnson Bar Project before this Court, and make all the same arguments that proposed intervenors would make concerning the facts of the Project, applicable legal principles, and reasons why injunctive relief should be denied.

Accordingly, for the reasons above, the motion for leave to intervene as of right under Rule 24(a) should be denied.

## II.      THE COURT SHOULD DENY PERMISSIVE INTERVENTION.

Movants cite *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2003), to argue they should be allowed permissive intervention under Rule 24(b) – but the facts and considerations above compel denying permissive intervention here, since it will not "contribute to equitable resolution of this case." *Kootenai*, 313 F.3d at 1111.

The Forest Service has proceeded with this Project for the primary purposes of benefiting local timber mills and the local economy, and can be expected to make all the same arguments that movants would make.  Movants' briefing contains numerous misleading and incorrect statements, which do not advance the equitable resolution of the case.  Moreover, allowing the movants to intervene now would prejudice Plaintiffs given the highly compressed injunction briefing and hearing schedule, underscoring again that their proposed participation would not "contribute to equitable resolution of this case"

PLAINTIFFS' RESPOSNE TO MOTION TO INTERVENE -- 14

under *Kootenai*, 313 F.3d at 1111.   Accordingly, the motion for permissive intervention should be denied.

### III.   IF THE COURT GRANTS INTERVENTION, IT SHOULD LIMIT MOVANTS' PARTICIPATION.

As indicated above, if the Court is inclined to grant intervention notwithstanding the arguments and points above, then it should only grant permissive intervention under Rule 24(b) and limit movants' participation as suggested below.  The Supreme Court has affirmed the propriety of imposing conditions that limit intervention and help ensure that the litigation proceeds expeditiously.  *See Stringfellow v. Concerned Neighbors*, 480 U.S. 370 (1987)

First, the Court should confine movants' participation in the injunction proceedings to the declarations and briefings they have already submitted to the Court in connection with their intervention motion. Those materials include the Higgins and Conner Declarations attesting to the alleged injuries that movants IFG and R&R contend they will experience if an injunction is granted; and hence there is no need for them to submit additional materials of this nature.  Allowing them to file further declarations would prejudice Plaintiffs, who will have no time to respond. Neither is there cause to allow movants to file briefings addressing all aspects of the injunction motion, since the Federal Defendants will do so – and are best positioned to defend the Forest Service's decision here.

Limiting movants' participation in this way will avoid undue prejudice to Plaintiffs, who otherwise will be unable to respond to further briefings submitted by movants in the three days allowed for reply briefing on the injunction motion.  Plaintiffs have used this response brief to correct some of the more glaring misstatements made in

PLAINTIFFS' RESPOSNE TO MOTION TO INTERVENE -- 15

movants' submissions, which the Court can take into account in evaluating the injunction motion.

Second, the Court should also direct that movants not duplicate arguments made by the Federal Defendants in connection with summary judgment or other proceedings after the injunction motion is resolved.   It is likely this case will proceed to summary judgment – potentially on an expedited schedule – after the injunction motion is decided, and however it is decided.  All parties want a rapid resolution on the merits, and hence the proposed intervenors' participation should be structured to facilitate that goal by requiring them not to duplicate the Federal Defendants' arguments on the merits.

## <u>CONCLUSION</u>

For the foregoing reasons, the motion to intervene (*Docket No. 20*) should be denied.  However, if the Court grants intervention, it should limit movants' participation in the injunction proceeding to the materials they already filed with the Court, and further limit their participation on the merits as suggested above.

DATED: April 14, 2016.            Respectfully submitted,

/s/ Laird J. Lucas
Laurence ("Laird") J. Lucas (ISB 4733)
Marc Shumaker (ISB #9606)
Advocates for the West
P.O. Box 1612
Boise, ID 83701
208-342-7024
llucas@advocateswest.org
mshumaker@advocateswest.org

Deborah A. Ferguson (ISB# 5333)
Ferguson Durham, PLCC
223 N. 6th Street, Suite 325
Boise, ID 83702
208-345-5183
daf@fergusondurham.com
*Attorneys for Plaintiffs*

PLAINTIFFS' RESPOSNE TO MOTION TO INTERVENE -- 16

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April, 2016, I caused the foregoing
PLAINTIFFS' RESPONSE OPPOSING MOTION TO INTERVENE and the
accompanying DECLARATION OF LAIRD J. LUCAS (plus all exhibits thereto) to be
electronically filed with the Clerk of the Court using the CM/ECF system, which caused
the following parties or counsel to be served by electronic means, as more fully reflected
on the Notice of Electronic Filing:

Counsel for Federal Defendants
Julia A. Thrower
U.S. Department of Justice
301 Howard Street, Ste. 1050
San Francisco, CA 94105
julie.thrower@usdoj.gov

Sean C. Duffy
United States Department of Justice
Environment & Natural Resources Division
Washington, DC 20044
sean.c.duffy@usdoj.gov

Rickey Doyle Turner, Jr.
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Denver, CO 80202
rickey.turner@usdoj.gov

Counsel for Movants
Paul A. Turcke
Cherese D. McLain
MSBT Law
950 W. Bannock St., Suite 520
Boise ID 83702
pat@msbtlaw.com
cdm@msbtlaw.com

Lawson E. Fite
American Forest Resource Council
510 S.W. Macadam, Suite 350
Portland OR 97239
lfite@amforest.org

/s/ Laird J. Lucas

PLAINTIFFS' RESPOSNE TO MOTION TO INTERVENE -- 17